# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GLORIA JEAN WOLFE, ) | Case No. 09-1326 |
| ) | |
| Debtor. ) | Chapter 7 |
| _____ ) | |
| ) | |
| GLORIA JEAN WOLFE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 10-64 |
| ) | |
| GREENTREE MORTGAGE ) | |
| CORPORATION, ) | |
| AMERICA'S SERVICING ) | |
| CORPORATION, and ) | |
| DEUTSCHE BANK TRUST COMPANY ) | |
| AMERICAS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Pending before the court are Greentree Mortgage Corporation's ("Greentree") motion for summary judgment, filed December 28, 2011, and America's Servicing Company ("ASC") and Deutsche Bank Trust Company Americas's ("Deutsche Bank") renewed motion for summary judgment, filed December 12, 2011. Greentree, ASC, and Deutsche Bank seek summary judgment on Count 1 of the complaint filed against them by Gloria Wolfe. Count I alleges that the defendants

-1-

engaged in unconscionable conduct in issuing a loan to her.

For the reasons stated herein, the court will grant both motions for summary judgment as to Count I.[1]

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Showing an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 at 248. Thus, the existence of a factual dispute is material - thereby precluding summary judgment - only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-

---

[1] ASC and Deutsche Bank are the servicer and holder, respectively, of the loan at issue. Together, they filed a motion for summary judgment. The "Plaintiff concedes there is no evidence that ASC participated in the unconscionable scheme to originate the loan" and "seeks no substantive relief against ASC on Count I [unconscionable inducement]." (Doc. No. 81). Accordingly, the court will grant ASC's motion for summary judgment on Count I.
    Deutsche Bank, as assignee, is subject to all claims and defenses that could be raised against the original lender, Greentree. *See Short v. Wells Fargo Bank Minn.*, 401 F. Supp. 2d 549, 562 (S.D.W. Va. 2005); *Lightner v. Lightner*, 124 S.E.2d 355, 362 (W. Va. 1962). And Deutsche Bank may be liable for Greentree's statutory violations. *Short*, 401 F. Supp. 2d at 556. Since the court holds that Greentree did not unconscionably induce Ms. Wolfe, the court grants Deutsche Bank's motion for summary judgment on Count I.

23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II.  BACKGROUND AND PROCEDURAL HISTORY

On July 11, 2009, Gloria Wolfe, the plaintiff, filed a Chapter 7 bankruptcy petition. On October 19, 2009, she filed a complaint against Greentree, ASC, and Deutsche Bank in the Circuit Court of Jefferson County, West Virginia, alleging seven counts: (Count 1) unconscionable inducement; (Count II) official misconduct by notary public; (Count III) joint venture and agency; (Count IV) breach of contract; (Count V) estoppel; (Count VI) illegal debt collection; and (Count VII) claim for illegal return of payment. Only Count I is currently before the court on the defendants' motions for summary judgment.[2]

On November 24, 2009, ASC and Deutsche Bank removed the action to the District Court for the Northern District of West Virginia. On December 15, 2009, Ms. Wolfe moved to remand the case to state court; the district court denied her motion and found that her cause of action is, at least in part, a core proceeding under 28 U.S.C. 157(b)(2). The court also dismissed Count II, finding that Anthony Freda was fraudulently joined. The case was then ordered by the district court to be transferred to this court.

Ms. Wolfe is a single mother who currently works at East Ridge Health Systems as a representative payee. She graduated from Jefferson County High School and received her high

---

[2] Although ASC and Deutsche Bank also seek summary judgment on the remaining counts, the court declines to consider these other claims at this time because Ms. Wolfe is seeking permission to amend the complaint. ASC and Deutsche Bank's renewed motion for summary judgment, filed December 12, 2011, relies on Ms. Wolfe's explicit abandonment and alteration of some of the claims she originally plead. During the pre-trial conference on January 19, 2012, the parties indicated that they wished the court to move forward only on the unconscionable inducement claim. Thus, based on the representations of counsel and given the current posture of the case, the court will only consider Count I.

school diploma. The only other course she has taken is a six-month course in office technology. Since 2000, Ms. Wolfe has had a number of jobs: bookkeeper, office manager, title clerk, food clerk, and a position in a human resource department.

In February 2000, Ms. Wolfe was gifted a parcel of real estate by her mother, located at 103 Orchard Drive, Ranson, West Virginia (the "Property"). (ASC Mot., Doc. No. 117-18, Ex. Q, G. Wolfe Dep. at 11 [hereinafter Wolfe Dep.]). At the time the Property was gifted, there was one deed of trust payable to Chase Manhattan Mortgage Corporation, which was taken out by Ms. Wolfe's parents. After Ms. Wolfe acquired the Property, she took out a second deed of trust with Jefferson Security Bank.

Sometime in the Fall of 2001, Ms. Wolfe sought to refinance the Property so she could pay costs associated with a family dispute. While employed as a clerk at a motel, a co-worker told her about Greentree. Ms. Wolfe did not receive any advertisements from Greentree or otherwise see any promotional material of Greentree. Ms. Wolfe contacted Greentree around October 2001 and spoke with Alonzo Davenport. During the conversation with Mr. Davenport, Ms. Wolfe informed him that she was seeking the same type of loan that her parents had with Chase Manhattan, and that she wanted monthly payments similar to what she was already paying to Chase. Ms. Wolfe does not remember him agreeing to her requests, but rather him saying that "they could help" her. (*Id.* at 18-19, 36-37). During the month leading up to closing, she spoke with Mr. Davenport four times, as well with other representatives of Greentree.

On November 8, 2001, Ms. Wolfe submitted a loan application to Greentree. The stated purpose of the loan was "Cash Out Debt Consolidation." The application sought a $70,400 loan with a 180-month term, and a 10.99% interest rate. On or about November 21, 2001, Greentree sent Ms. Wolfe the loan closing documents by overnight delivery.[3] She believed that she had twelve

---

[3] The loan was a fixed rate Balloon Note (the "Note") in the amount of $70,400 with a 180-month term and a fixed interest rate of 10.99%. The monthly payments were $669.91, with a balloon payment of $59,643.62 due after fifteen years. The payments began on December 27, 2001 and the balloon payment was due on November 27, 2016. The Note also included a prepayment penalty if it was prepaid during the first five years after its origination. The Note was secured by a deed of trust on the Property. By refinancing, Ms. Wolfe satisfied two preexisting mortgages – Chase Manhattan Mortgage and Jefferson Security Bank – in the amount of $39,617.26, certain unsecured debt, and obtained $11,335.86 in cash. The settlement

-4-

hours to sign and return the documents. The loan documents contained sticker tabs indicating where she should sign. Ms. Wolfe read all of the loan documents but had troubles understanding the loan terms. She contacted Greentree to ask questions and was told to "sign or initial and send the papers back." (Wolfe Dep. at 44-45). She did not consult with anyone else to help her understand the terms before signing. And she did not attempt to obtain financing from another lender, or perform any research to determine if she could procure a different financing package.

Ms. Wolfe made timely payments on the Note for approximately five years. Late in 2006, Ms. Wolf had surgery and soon thereafter began encountering payment problems. Over the next three years, she had trouble making her payments. During that time, she entered into a number of forbearance and loan modifications with ASC: in May 2007, Ms. Wolfe and ASC entered into a forbearance arrangement; in March 2008, another forbearance arrangement; and in October 2008, she entered into a loan modification.[4]

### III. DISCUSSION

Ms. Wolfe seeks a declaration that the Note is unenforceable under West Virginia Code § 46A-2-121(1)[5] because she was "induced by unconscionable conduct" and the loan "contained

---

charges incurred in connection with the Note totaled $4,843.88.

[4] In evaluating Ms. Wolfe's unconscionable inducement claim, the focus of the court's examination is the circumstances surrounding the execution of the Note; as such, a detailed discussion of the loan modifications, forbearance arrangements, and terms thereof is unnecessary. *E.g.*, *Brown v. Genesis Healthcare Corp.*, Case No. 35494, 2011 W. Va. LEXIS 61, at *87 (W. Va. June 29, 2011) (commenting that courts should generally evaluate the unconscionability at the time the contract is executed), *vacated on other grounds*, 2012 U.S. LEXIS 1076 (Feb. 21, 2012) (rejecting Supreme Court of Appeals of West Virginia's interpretation of the Federal Arbitration Act); *Orlando v. Fin. One of West Virginia, Inc.*, 369 S.E.2d 882, 885 (W. Va. 1988) ("An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract . . . .").

[5] West Virginia state law governs the courts determination of unconscionability. *E.g.*, *In re STN Enterprises, Inc.*, 45 B.R. 959, 962 (Bankr. D. Vt. 1985) ("It is universally held that the validity, nature and effect of liens are governed by the law of the state."). In full, West Virginia Code § 46A-2-121(1) provides:

"(1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:

-5-

unconscionable terms." (Doc. No. 4-3, ¶ 34). Ms. Wolfe claims that Greentree "engaged in a pattern of home equity skimming and predatory lending practice to make unfair loans in order to transfer the home equity from Plaintiff to Defendants." (*Id.* at ¶ 30).[6] Specifically, Ms. Wolfe alleges that she was induced to sign the Note by Greentree "failing to provide any disclosures prior to closing; refusing to provide explanation regarding the loan terms at or before closing"; failing to conduct the closing in a commercially reasonable manner; and conducting the closing "in an uninformative rushed manner." (*Id.* at ¶ 32). She further contends that the loan terms "constituted an unfair surprise": the loan contained "bogus" origination fees and costs, a burdensome balloon payment that was not explained, an illegal prepayment penalty, and illegal finance charges. (*Id.* at ¶ 33).

In support of its motion for summary judgment, Greentree states that it cannot be liable for unconscionable conduct under West Virginia Code § 46A-2-121(1) because the formation of the contract was not procedurally unconscionable. Greentree asserts that (1) the risk allocation was reasonable, (2) it did not solicit Ms. Wolfe, (3) Ms. Wolfe assented to the terms of the Note by reading and signing all the loan documents, and (4) she did not seek out any other lender, or otherwise investigate the loan she was offered.

In response, Ms. Wolfe contends that there was a gross disparity in bargaining power and the relative position of the parties, and that she had no meaningful alternatives. Ms. Wolfe states that she is an unsophisticated consumer because she only has a high school diploma, was a first time home borrower, and has primarily worked low-wage jobs. Ms. Wolfe, as evidence of gross disparity

---

"(a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or

"(b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result."

[6] Although three defendants are moving for summary judgment on Count I, the court's discussion will focus exclusively on Greentree. *See supra* note 1.

in bargaining power, argues that Greentree ignored her loan requests and suppressed the essential terms of the Note.  Regarding meaningful alternatives, she contends that she did not have any financial alternatives to the Note because she relied on Greentree's "representations . . . that it had 'access to every major bank, lender and investor in the country' and 'would act as her 'personal shopper.'"  (Doc. No. 134).

In West Virginia, a court may refuse to enforce a consumer loan agreement if the court, as a matter of law, finds that the agreement was induced by unconscionable conduct.  W. Va. Code § 46A-2-121(1)(a). The term "unconscionable" is not defined by the West Virginia Consumer Credit Protection Act.  But the Supreme Court of Appeals for West Virginia has stated that it looks to the definition of "unconscionable" that was furnished by the drafters of the Uniform Consumer Credit Code, which contains identical provisions to § 46A-2-121.  *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 860-61 (W. Va. 1998).  Pursuant to the Uniform Consumer Credit Code, "the principle of unconscionability 'is one of the prevention of oppression and unfair surprise and not the disturbance of reasonable allocation of risks or reasonable advantage because of superior bargaining power or position.'" *Id.* (quoting *Uniform Consumer Credit Code*, § 5.108 comment 3, 7A U.L.A. 170 (1974)).  In analyzing unconscionability, the court should consider "the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 750 (W. Va. 1986).  Courts should also bear in mind the nature of commercial transactions; generally, some inequality of bargaining power exists, and a contract is not rendered unconscionable because this inequality results in the weaker party bearing more risk.  *See Arnold*, 511 S.E.2d at 861; *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co.*, 413 S.E.2d 670, 674 (W. Va. 1991).

"A determination of unconscionability must focus on the [1] relative positions of the parties, [2] the adequacy of bargaining position, [3] the meaningful alternatives available to the plaintiff, [4] and the 'existence of unfair terms in the contract.'" *Art's Flower Shop*, 413 S.E.2d at 675.  The first three factors are generally couched as procedural unconscionability inquiries, while the fourth is categorized as substantive unconscionability.  Recently, the Supreme Court of Appeals of West Virginia observed that under West Virginia law, an analysis of unconscionability involves two components: procedural unconscionability and substantive unconscionability. *Brown*, 2011 W. Va. LEXIS 61, at *89; *see Arnold*, 511 S.E.2d at 861 n.6 (stressing that rendering a contract

-7-

unenforceable based on unconscionability grounds requires both procedural and substantive unconscionability).

Procedural unconscionability involves inequities or unfairness in the bargaining and formation of the contract. The underlying concern is whether "inadequacies" in the transaction prevent a voluntary meeting of the minds. *Brown*, 2011 W. Va. LEXIS 61, at *96. Inadequacies that may hinder such meeting include "age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed. . . ." *Id.* at 96-97. Substantive unconscionability, on the other hand, focuses on the unfairness in the contract terms and whether the terms are so one-sided that the contract has an overly harsh effect to the disadvantaged party. *Id.* at *100. In that regard, courts should generally consider the "commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Id.*

Here, considering the facts in a light most favorable to Ms. Wolfe as the non-movant, insufficient indicia of unconscionability exists; thus, Greentree is entitled to summary judgment on Count I.

First, regarding the relative position of the parties, nothing atypical exists in this case. Wolfe was in her mid-thirties when she signed the Note. She has a high school diploma and has had steady employment since at least 2000. Ms. Wolfe alleges that she is unsophisticated in financial matters and did not understand the home purchasing process, while Greentree is a national lender and a "Super-Broker." Indeed, there is a disparity between the parties relative positions; however, West Virginia courts recognize that "it is not the province of the judiciary to try to eliminate the inequities inevitable in a capitalist society." *Troy Mining Corp.*, 346 S.E.2d at 753-54. The inequality between the relative position of the parties requires a greater imbalance than exists in this case. *See Arnold*, 511 S.E.2d at 861 (finding that parties were "grossly unequal," in part, because one party was a national lender, while the other parties were a sixty-nine year old with a fifth grade education, and a sixty-three year old with an eighth grade education).

Second, Ms. Wolfe states that a gross inadequacy of bargaining power exists because she did not get the loan she requested, Greentree provided no oral explanation of the loan terms, and the closing was conducted in a hurried and stressful manner. Ms. Wolfe argues that "[m]ost significantly . . . her attempts . . . to bargain for a desired type of loan were completely disregarded

-8-

by Defendant Greentree despite its representations to the contrary." (Doc. No. 134). Ms. Wolfe told Greentree that she wanted a loan similar to what her parents had, which was a 30-year loan at 8.38%. And said that she wanted payments that were not much higher than what she was currently paying, around $350. Mr. Davenport and other Greentree representatives she spoke with, however, did not say that she would be receiving these terms; rather, they informed her that they "could help her." Therefore, Greentree did not promise Ms. Wolfe certain terms and then substitute different terms in the Note. Moreover, Greentree's offer to help did not involve elements of deception or misrepresentation.[7] Offering to help in this situation is either accurate or a forward-looking statement of opinion. *See Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 142 (W. Va. 2001) ("'It is well settled that a misrepresentation . . . must be of an existing fact, and not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud.'") (citation omitted). Even assuming that Greentree did mislead Ms. Wolfe, which the court does not suggest, "the documents that . . . [she] signed plainly stated the terms of the transaction and more than corrected any misleading oral statements." *Johnson v. Washington*, 559 F.3d 238, 245 (4th Cir. 2009).

Ms. Wolfe also argues that Greentree failed to orally explain the loan terms and purposefully suppressed the essential terms of the loan. Greentree, however, has no duty to orally explain the terms of the contract. *Adkins v. Labor Ready Mid-Atlantic, Inc.*, 185 F. Supp. 2d 628, 638 (S.D.W. Va. 2001) (explaining that "there is no requirement that the more sophisticated party to a contract offer the less sophisticated party an oral explanation of the terms of the contract"), *aff'd*, 303 F.3d 496 (4th Cir. 2002); *see also Miller v. Equifirst Corp. of West Virginia*, Case No. 2:00-0335, 2006 WL 2571634, at *11 (S.D.W. Va. 2006) (same). Ms. Wolfe signed or initialed all three pages of the Balloon Note; signed a separate Balloon Note Addendum (which contained a single paragraph in bold capital letters describing the nature of a balloon note); and signed a separate Balloon Rider.

---

[7] In further support of her contention that Greentree's offer to help involved elements of deception, she points out that she requested a 30-year, low fixed rate mortgage, and "was provided with no disclosures or information indicating otherwise during the origination process." (Doc. No. 124). The court disagrees. As discussed more fully below, Ms. Wolfe was provided with ample disclosures and information regarding the terms of the Note, which plainly indicate that she was neither receiving a 30-year loan nor payments similar to what she was paying to Chase.

-9-

Furthermore, nearly a month before the loan closing date, on October 24, 2001, Ms. Wolfe signed a one-page Good Faith Estimate, which disclosed the loan amount, interest rate, and estimated monthly payments. On that same day, she also signed a one-page Truth in Lending Disclosure Statement that contained, among other terms, the number of payments and payment amounts (including the balloon payment amount). All these same terms appeared again, at the time of closing, when she signed her loan agreement.[8] Consequently, Greentree did not attempt to hide "the important terms . . . in a maze of fine print" or otherwise employ unscrupulous bargaining tactics to suppress the contract terms. *Brown*, 2011 W. Va. LEXIS 61, at *96.

Additionally, Ms. Wolfe contends that the closing was conducted in a "hurried and stressful" manner because she was told to return the loan documents within one day after receiving them. She contends that such conduct "suggests that the closing was pressured, compelled, or urged" by Greentree. (Doc. No. 134 (quoting *Koontz v. Wells Fargo, N.A.*, Civil Action No. 2:10-cv-00864, 2011 WL 1297519, at *5 (S.D.W. Va. March 31, 2011)). Although Ms. Wolfe may have been under a one day deadline to return the loan documents, she had a "reasonable opportunity to understand the terms of the contract." *Brown*, 2011 W. Va. LEXIS 61, at *97. She had already seen all the essential loans terms – such as the interest rate, payment amount, payment period, and balloon payment – nearly a month before closing. Moreover, she spoke with Mr. Davenport four times during the month leading up to the closing and partook in other phone calls with Greentree representatives to finalize the loan. These circumstances do not ring of compulsion or pressure. In fact, nothing in the record demonstrates that she was prevented "from meaningfully reviewing the material . . . [she was] presented or from understanding the implications . . . of signing the loan documents." *Miller*, 2006 WL 2571634, at *11. Ms. Wolfe read all the loan documents before signing them. In short, Ms. Wolfe read the entire contract, signed in all the necessary places, and sent the contract back to Greentree. *See Knapp v. Am. Gen. Fin. Inc.*, 111 F.Supp.2d 758, 763 (S.D.W. Va. 2000) (recognizing as a "widely accepted principle of contracts" that one who signs

---

[8] For purposes of accuracy, the Truth in Lending Disclosure Statement's stated interest rate of 11.689% was higher than the interest rate Ms. Wolfe ultimately agreed to in the loan agreement, 10.990%. That is, her interest rate ended up being lower than what was reflected on the disclosure statement.

a "written instrument will normally be bound in accordance with its written terms and cannot disaffirm the contract simply by contending that . . . [she] failed to . . . understand its contents.") (internal quotation marks omitted). Even drawing all reasonable inferences in favor of Ms. Wolfe, she has failed to demonstrate that gross inadequacy in bargaining power existed at the formation of the Note.

Third, Ms. Wolfe fails to provide any evidence that she had no meaningful alternatives to signing the Note. Ms. Wolfe asserts that she did not have any meaningful financial alternatives because she relied on Greentree's representations in its welcome letter that it had "access to every major bank, lender and investor in the country" and would be her "personal shopper." (Wolf Dep. at 87; Doc. No. 124-5, Ex. E). However, her conclusion in that regard does not flow necessarily from her argument's premise and is belied by the facts. Greentree's representations, and any reliance placed upon them by Ms. Wolfe, fail to show a lack of meaningful financial alternatives. Ms. Wolfe does not provide any evidence that Greentree was the only lending institution in a position to make her a loan, or that she was rejected by other lenders. She admits that she never sought out any other lending institutions or undertook any investigation into other possible avenues for financing. Importantly, there was no solicitation by Greentree: Ms. Wolfe, based on a recommendation from a friend, sought out Greentree for refinancing. Ms. Wolfe also infers that she was prevented from seeking other lenders since she was under pressure to refinance due to a recently reached settlement. However, she fails to show that she was in dire economic straights, and without time to seek other financing opportunities. *See Hager v. American Gen. Fin.*, 37 F. Supp. 2d 778, 787 (S.D.W. Va. 1999) (denying defendant's motion for summary judgment based, in part, on "the immediacy of plaintiffs' economic needs" as they had "lost their possessions in a house fire and were in need of financial assistance").

Taking into consideration all of the facts and circumstances in this case, the court finds that Ms. Wolfe failed to demonstrate that the formation of the contract was rife with "inequities, improprieties, or unfairness in the bargaining process." *See Brown*, 2011 W. Va. LEXIS 61, at *96-97 (describing the doctrine of procedural unconscionability).

### IV. CONCLUSION

To render a contract unconscionable in West Virginia, a court must find that the contract was both procedurally and substantively unconscionable. *E.g., Adkins v. Labor Ready Mid-Atlantic, Inc.*,

303 F.3d 496, 502 (4th Cir. 2002); *Arnold,* 204 S.E.2d at 861 n.6. Because the court holds that the formation of the contract was not procedurally unconscionable, it is unnecessary to consider whether the loan documents contain unfair terms. *See Womack v. Wells Fargo, N.A.*, Civil Action No. 1:11-CV-104, slip op. at 13 (N.D.W. Va. November 17, 2011) ("Therefore, because the plaintiffs have failed to adequately plead the element of "'gross inadequacy in bargaining power,'" this Court finds that the plaintiffs have failed to state a claim for unconscionable inducement. As such, this Court finds it unnecessary to analyze whether the loan documents contain unfair terms."). Therefore, the court will grant both motions for summary judgment on Count I. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.